CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
August 14, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **KEVIN A. WATSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25CV00580 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **M.E. ENGELKE,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendant. | ) | |

*Kevin A. Watson, Pro Se Plaintiff; Timothy E. Davis, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, Richmond, Virginia, for Defendant.*

The plaintiff, Kevin A. Watson, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that the defendant violated his rights under the Free Exercise Clause of the First Amendment of the United States Constitution and the Religious Land Use and Institutionalized Persons Act (RLUIPA) by failing to accommodate his requested religious diet.[1] The defendant, M.E. Engelke, the Director of Food Services for the Virginia Department of Corrections (VDOC), has filed a Motion for Summary Judgment (Motion). The

[1] By Opinion and Order entered August 20, 2025, Watson's Complaint was severed into three separate civil actions. *Watson v. Hamilton*, No. 7:24-cv-00298, Op. & Order 7–8, Dkt. No. 59. This case consists only of Watson's Claim G against defendant M.E. Engelke.

matter has been briefed by the parties and is ripe for consideration. Upon review of the record, I conclude that the Motion must be granted.

## I. Background.

At all relevant times, Watson was confined at Red Onion State Prison (ROSP).[2] According to the record, ROSP offers two religious diet options for inmates whose religious dietary needs cannot be met by the prison's general menu: (1) the Common Fare Diet, which "requires foods that a re certified Kosher and pork-free, and includes more fresh fruit and vegetables," and (2) the Sealed Religious Diet, which includes "Kosher meals made in a VDOC custom-created Kosher Kitchen" but is not limited to Jewish inmates. Def.'s Mem. Supp. Summ. J. Engelke Decl. at ¶¶ 8, 9, Dkt. No. 12-1. Watson, a member of the Nation of Gods/Earth (NOGE) religion, was originally receiving the Common Fare diet. Compl. 25, Dkt. No. 1. At some point, Watson "discovered that his religion forbids him to eat any harmful foods in addition to pork." *Id.* Although it was his prior understanding that "pork was the only food forbid[den] to eat[, h]is religion authority corrected his misunderstanding by expressing to him: 'I shall not eat any harmful foods and this commandment is not limite[ed] to pork.'" *Id.*

[2] Watson has since been transferred to a different facility within the VDOC. Notice of Change of Address, Dkt. No. 14.

Based on his discovery, Watson submitted a Reasonable Accommodation Request to the facility's Americans with Disabilities Act (ADA) Coordinator in October 2022, asking for "a medical/food nutritional accommodation for my religious belief dietary restriction: 'I shall not eat corn, wheat, flour, soy, sugar, MSG, EDTA, phosphates, gluten, peanuts, high-fructose corn syrup, saccharin, artificial colors, refined carbs, saturated, hydrogenated, and trans fats.'" Def.'s Mem. Supp. Summ. J. Engelke Decl. Encl. A, Dkt. No. 12-1. According to Watson, the "United States Food Drug Administration [(FDA)] . . . the medical community and nutritional community has determine[d] [that] list of food ingredients to be harmful and not be eat[en] for several health reason(s)." Compl. 25, Dkt. No. 1. Because "the foods that [are] being served on the Common Fare and Seal Meal contains the above list of ingredients," Watson requested a religious diet that "does not contain any of the above listed harmful ingredients." *Id.* at 26. The ADA Coordinator denied Watson's request, determining that it did not fall under the ADA and advised him that he can seek available religious diets by speaking with the appropriate official.[3] Def.'s Mem. Supp. Mot. Summ. J. Engelke Decl. Encl. A, Dkt. No. 12-1.

---

[3] Despite submitting an ADA request, Watson does not raise any claims under the ADA in his Complaint. Because Watson's claims sound in religious liberty violations and he does not allege that he has a disability, I will not construe his pleadings as containing ADA allegations. *See, e.g.*, *Jackson v. Dameron*, 171 F.4th 641, 654 (4th Cir. 2026)

Watson then submitted a facility request, seeking the same religious diet modification. *Id.* Encl. B. In response, a staff respondent identified the two religious diets offered and stated that "it looks like you have been on Common Fare since March 2021." *Id.* Dissatisfied with the response, Watson filed a written complaint, stating that "[t]he two religious diets – 'Common Fare' and 'Seal Diet' contains named ingredients . . . that [he] cannot eat. Per (RLUIPA) Food Service must provide [him] a religious diet without those ingredients." *Id.* A prison official responded as follows:

> All religious diets are approved by policy/dietitian, not at the institutional level. We do not pick and choose our vendors. Per your request, you are approved for the C/F diet. If you wish to be put on the SRD diet, put in a request form to your counselor. The nutritional value and ingredients used to prepare the meal applies to the Kosher meals as well. Food Services goes by policy and the dietitian required menus for the diets approved in the institutions for a nutrition[ally] adequate meal.

*Id.* Watson submitted a grievance and appealed the issue to the highest level of administrative review.

Then, on December 7, 2022, Watson sent a facility request, including a written letter, to the defendant, Engelke, requesting religious accommodation for his dietary needs. Compl. 25, Dkt. No. 1; Def.'s Mem. Supp. Mot. Summ. J. Engelke Decl. Encl. C., Dkt. No. 12-1. Watson explained to Engelke his misunderstanding

(concluding that a district court did not err when it did not construe a deliberate indifference claim as including an ADA violation based on review of the factual allegations themselves).

regarding his dietary restrictions, and the clarification from his "religion authority" that the restrictions are not merely limited to pork, but include all "harmful foods." *Id.* Watson stated the "[t]he U.S. FDA, the medical and nutritional communities has determine[d] the following list of ingredients to be harmful and not to be eating for several health reasons. 'Corn, wheat, flour, soy, sugar, MSG, EDTA, phosphates, gluten, peanuts, high fructose corn syrup, saccharin, artificial colors, refined carbs, saturated, hydrogenated and trans fat.'" *Id.* Despite being "currently on the Common Fare diet," he requested a diet that does not contain any of the listed "harmful ingredients." *Id.*

In response to Watson's request, Engelke stated that

> Unfortunately, effective October 1, 2021, a new policy went into effect. The process to request assignment to the Sealed Religious Diet is found in Operating Procedure 841.3, Offender Religious Programs. It states "Participation in the Sealed Religious diet is voluntary; inmates who wish to participate must submit a Religious Diet Request 841_F25 to their Counselor who will prepare the Institutional Classification Authority Hearing Notification in VACORIS." I have included a blank request form for your convenience.

*Id.* Engelke's denial of Watson's religious dietary accommodation request forms the basis of this lawsuit. Watson sues Engelke in his individual capacity for monetary damages for the violation of his constitutional and statutory rights.[4] He further sues Engelke in his official capacity as the VDOC Food Services Director and requests

[4] Engelke cannot be held liable for monetary damages in his individual capacity under RLUIPA. *See Landor v. La. Dep't of Corr. & Pub. Safety*, 146 S. Ct. 1931 (2026).

"an injunction that the defendant approve his religious diet request and provide plaintiff a nutritional 2,000 calor[ie] diet without the said harmful food ingredients." Compl. 27, Dkt. No. 1.

## II. Discussion.

### A. Standard of Review.

Rule 56 of the Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* In considering a motion for summary judgment, the court must view the facts and justifiable inferences in the light most favorable to the nonmoving party. *Id.* at 312-13. To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Free Exercise Clause and RLUIPA Claims.

Inmates have a constitutional and statutory right to a diet consistent with their sincere religious beliefs. *Lovelace v. Lee*, 472 F.3d 174, 198–99 (4th Cir. 2006). The Free Exercise Clause of the First Amendment to the United States Constitution

"requires prison officials to reasonably accommodate an inmate's exercise of sincerely held religious beliefs." *Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019). To prevail on a Free Exercise claim, an inmate must first establish that he holds a sincere religious belief and that the prison's practice or policy places a substantial burden on his ability to practice his religion. *Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017). Once the plaintiff makes this "threshold" showing, the burden shifts to the defendants to "offer[] penological interests that justify its infringement on free exercise rights." *Id.* Then, "if the prison adequately alleges a penological interest, a plaintiff can still prevail if the policy is not reasonably related to that interest." *Id.* It's not until that point in the analysis that the factors outlined in *Turner v. Safley*, 482 U.S. 78, 89–90 (1987) are examined.[5] *Id.*

Similarly, RLUIPA prohibits governmental entities from "impos[ing] a substantial burden on the religious exercise" of an inmate. *Id.* at 249 citing 42 U.S.C.

---

[5] The *Turner* test asks:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Wall v. Wade*, 741 F.3d 492, 499 (4th Cir. 2014) (citing *Lovelace*, 472 F.3d at 200).

§ 2000cc-1(a). While a prisoner asserting religious liberty claims may utilize both First Amendment and RLUIPA mechanisms, "the RLUIPA arrow flies farther and strikes harder." *Roberts v. Engelke*, 180 F.4th 634, 638 (4th Cir. 2026). Under RLUIPA, "the inmate bears the initial burden of establishing that a prison policy substantially burdens his or her ability to practice in accordance with a sincerely held religious belief." *Greenhill*, 944 F.3d at 250. Then, "once the plaintiff makes the requisite initial showing, the burden shifts to the government to show that the prison policy is the least restrictive means of furthering a compelling governmental interest." *Id.*

Engelke does not dispute at this stage that Watson's beliefs regarding his dietary restrictions are sincerely held. He does, however, contend that these beliefs are not religious in nature where Watson relies on information from the FDA, a secular authority, to state which food items he is prohibited from consuming. To determine whether a plaintiff's beliefs are religious in nature, Engelke submits that the court must consider "whether the 'beliefs occupy a place in [the plaintiff's] life parallel to that filled by the orthodox belief in God." *Coward v. Jabe*, 532 F. App'x 328, 330 (4th Cir. 2013) (unpublished) (quoting *Moore-King v. Cnty of Chesterfield*, 708 F.3d 560, 571 (4th Cir. 2013)). But "it isn't for judges to decide whether a claimant who seeks to pursue a particular religious exercise has 'correctly perceived the commands of [his] faith' or to become 'arbiters of scriptural interpretation.'"

*Edwards v. King*, No. 7:21-cv-00047, 2022 WL 875039, at *4 (W.D. Va. Mar. 23, 2022) (quoting *Yellowbear v. Lampert*, 741 F.3d 48, 54–55 (10th Cir. 2014)). Because "RLUIPA defines the term 'religious exercise' broadly to include 'any exercise of religion, whether or not compelled by, or central to, a system of belief,'" I will assume that Watson holds a sincere religious belief and that his beliefs are religious in nature. *See Couch v. Jabe*, 679 F.3d 197, 200 (4th Cir. 2012); *see also Coward v. Robinson*, 276 F.Supp.2d 544, 567 (E.D. Va. 2017) (considering evidence from a religious expert and determining that an inmate practicing the NOGE religion had beliefs that were religious in nature in order to be entitled to protection under both RLUIPA and the Free Exercise Clause).

Engelke next challenges whether the prison's practices and policies impose a substantial burden on Watson's religious exercise. Under both the First Amendment and RLUIPA,

> a "substantial burden" is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," . . . or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning the precepts of her religion . . . on the other hand."

*Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Rev. Bd. Of Ind. Emp. Sec. Div.*, 450 U.S. 707 (1981)).

This is where Watson's religious claims fail. Watson insists that Engelke's refusal to provide his requested diet, which requires him to "eat the food that contains

harmful ingredients and abandon the precepts of [his] religion or refuse to eat and practice the precepts of his religion," imposes a substantial burden on his religious exercise. Pl.'s Resp. 7, Dkt. No. 18. The only evidence he provides to bolster this argument is a self-serving declaration reiterating his claims, along with a memorandum from the VDOC's Chief of Corrections Operations that recognizes NOGE as a religion. *See*, *e.g.*, *Jones v. Shabazz*, 352 F. App'x 910, 914 (5th Cir. 2009) (unpublished) (determining that the plaintiff failed to demonstrate a substantial burden because he only produced a "self-serving affidavit" regarding mandatory principles of his faith). The memorandum indeed recognizes NOGE as a religion and provides that its followers will have "the same rights and privileges afforded to all other religions approved to operate in [VDOC] facilities." *Id.* Ex. B, Dkt. No. 18-3. It further includes a section regarding religious diet accommodations, which offers that "NOGE adherents may request assignment to Common Fare through the established process." *Id.*

Nowhere in Watson's submissions is there any support for his contention that the specific food items he lists are prohibited by a religious tenant. The religious belief that he relies upon is the "commandment" that "'I shall not eat any harmful foods and this commandment is not limite[ed] to pork.'" Compl. 25, Dkt. No. 1. Notably, however, Watson does not discuss any of the NOGE's "central texts," which may include such principles regarding the alleged dietary restrictions. *Coward v.*

*Robinson*, 276 F.Supp.3d 544, 552–53 (E.D. Va. 2017) (discussing testimony presented regarding the NOGE studied religious texts and literature, which include the 120 Degrees, Supreme Mathematics, Supreme Alphabets, the12 Jewels, the Bible, the Qur'an, and the Five Percenter). Rather, it appears that he has independently determined what foods and ingredients may be harmful to him without submitting any evidentiary basis to the court. It is true that religious rights "extend[] as much to the practices of mainline members of a faith as [they do] to 'idiosyncratic' followers." *Roberts v. Engelke*, 180 F.4th 634, 645 (4th Cir. 2026) (quoting *Holt v. Hobbs*, 574 U.S. 352, 362 (2015)). However, on summary judgment, sufficient evidence in support of a claim is required to create a genuine dispute of material fact. Although Watson claims that his "religion authority" advised that he not consume any "harmful foods," he does not provide any source of this authority, any evidence regarding whether the authority in turn relies on the purported list from "the FDA, the medical community, and nutritional community" in determining which food ingredients are harmful, or evidence that the listed items are in fact harmful. Compl. 25, Dkt. No. 1.

Conversely, Engelke provided a declaration of N. Keeney, the VDOC's Director of Nutrition Services, who states that removal of the items Watson requests "is not nutritionally sound and would place [him] at a very high risk for malnutrition." Def.'s Mem. Supp. Mot. Summ. J. Keeney Decl. ¶ 6, Dkt. No. 12-2.

Watson has offered no evidence to refute this statement, nor does he offer the resources he claims list the supposed harmful items. *See*, *e.g.*, *Canada v. Ray*, No. 7:08-cv-00219, 2011 WL 565611, at *4 (W.D. Va. Feb. 9, 2011) (granting summary judgment under RLUIPA where the plaintiff failed to offer evidence refuting a doctor's declaration or otherwise provide any submissions in support of his factual claim). Where the record is devoid of evidence in support of his factual claim that eating the specific dietary items provided requires him to abandon a precept of his religion, Watson cannot prove that his religious exercise has been substantially burdened. Therefore, no reasonable jury could determine that Watson's religious exercise has been substantially burdened in order to return a verdict in his favor under RLUIPA or the Free Exercise Clause.

Because Watson has failed to meet his initial burden, I will not proceed to the second stage in the analysis under RLUIPA or the First Amendment to determine whether the prison's policies are justified under the circumstances. *Richardson v. Clarke*, 52 F.4th 614, 622 (4th Cir. 2022). Ultimately, based on the evidence in the record, Watson's RLUIPA and Free Exercise Clause claims fail for the reasons stated, and Engelke is entitled to summary judgment.

## III. CONCLUSION.

For all the reasons stated, the defendant's Motion for Summary Judgment, Dkt. No. 11, will be granted and judgment will be entered in favor of the defendant.

ENTER: August 14, 2026

/s/ James P. Jones
Senior United States District Judge